# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Steve Zanmiller ) | |
| on behalf of himself ) | |
| and all others similarly situated ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | |
| ) | Demand for Jury Trial |
| Kia America, Inc., ) | |
| 111 Peters Canyon Rd. ) | Case No. |
| Irvine, CA 92606 ) | |
| Registered Agent ) | COMPLAINT – CLASS ACTION |
| CT Corporation System ) | |
| 28 Liberty Street ) | |
| New York, NY 10005 ) | |
| ) | |
| And ) | |
| ) | |
| Hyundai America ) | |
| Technical Center, Incorporated ) | |
| Registered Agent ) | |
| Mark S. Torigian ) | |
| 6800 Geddes Rd. ) | |
| Superior Township, MI 48198 ) | |
| ) | |
|     *Defendants*. ) | |

## CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL

Comes now Plaintiff, individually and on behalf of all other persons similarly situated, for his complaint for damages against Defendants Kia America, Inc, and Hyundai America Technical Center, Inc. (collectively, "Defendants").

## NATURE OF ACTION

1. This is a class action claim arising from a defect in Defendants' vehicles which make them easy to steal, unsafe, and worth less than they should be, if they did not have the defect.

2.    Defendants did not disclose this defect, which is a material fact, and a fact that a reasonable person would rely on when purchasing a vehicle.

3.    During the relevant class period, Defendants sold these Defective Vehicles (as defined below) at multiple locations throughout the state of Minnesota and the United States.

4.    During the relevant class period, Defendants manufactured, designed, and put into the stream of commerce the Defective Vehicles.

5.    Defendants did so without disclosing the fact that these vehicles had a defect which made them easy to steal, unsafe, and worth less than they should be, if they did not have the defect.

6.    Even now, Defendants admit there is a theft problem with these vehicles but refuse to fix them, compensate consumers, or otherwise take actions to solve the problems their Defective Vehicles are causing.

## PARTIES

7.    Plaintiff Steve Zanmiller is a resident and citizen of the state of Minnesota.

8.    Plaintiff brings this action on his own behalf and as a representative of a class of persons who purchased and/or own a Defective Vehicle that was manufactured, produced, distributed, and/or sold by Defendants.

9.    This matter arises out of negligent acts, errors, and omissions committed by the Defendants against Plaintiff causing Plaintiff and the putative class to suffer damages.

10.    Plaintiff brings this action on his own behalf and as representative of a class of similarly situated persons to recover damages for violations of the Minnesota Deceptive Trade Practices Act (MUDTPA), Minn. St. §325D.43 *et seq.,* among other claims, for economic and injunctive relief against Defendants which manufactured, designed, tested, distributed, promoted and sold the Defective Vehicles.

11. At the time the vehicle was manufactured and sold, it did not have an engine immobilizer which was a characteristic that the vehicle was represented to have.

12. At the time the vehicle was purchased, Plaintiff were unaware that the vehicle lacked an engine immobilizer.

13. Plaintiff purchased a 2020 Kia Sportage for personal, family or household purposes.

14. Plaintiff's vehicle was stolen in July 2022.

15. When Plaintiff's vehicle was recovered, it was determined to be a total loss.

16. Plaintiff, on behalf of himself and the putative class, seeks a refund for monies paid as a result of their purchase of the Defective Vehicles, compensation for other losses incurred as a result of the defect, and further seeks injunctive relief, enjoining Defendants from selling the Defective Vehicles, and requiring Defendants to fix the defect.

17. Defendant, Kia America, Inc., is a resident and citizen of California as it is a California corporation that maintains its principal place of business at 111 Peters Canyon Road, Irvine, California, 92606. Defendant Kia America, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

18. Defendant, Hyundai America Technical Center, Inc., is a resident and citizen of Michigan in that it is a Michigan corporation that maintains its principal place of business at 6800 Geddes Road, Superior Township, Michigan 48198. Defendant Hyundai America Technical Center, Inc. is engaged in the business of testing, developing, manufacturing, labeling, marketing, distributing, promoting, supplying and/or selling, either directly or indirectly, through third parties and/or related entities, the Defective Vehicles.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA") because (1) Plaintiff brings this action on behalf of a class which numbers in the thousands, (2) Plaintiff (Minnesota) and Defendants (California and Michigan) are citizens of different states, and (3) the aggregate amount in controversy exceeds $5,000,000. *See* 28 U.S.C. § 1332(d). Plaintiff brings a putative class that includes all people that purchased a Defective Vehicle within the State of Minnesota. On information and belief, Defendants have sold thousands of Defective Vehicles throughout Minnesota, totaling millions upon millions of dollars in sales.

20. This Court has personal jurisdiction over Defendants in that Defendants transact business within the state of Minnesota and committed one or more tortious acts within the state of Minnesota.

21. Defendants transacted business and/or committed tortious acts within the state of Minnesota. Defendants design, manufacture, distribute, and/or sell dangerous and/or defective vehicles in Minnesota. Defendants placed the Defective Vehicles and dangerous products into the stream of commerce, sold and/or supplied said products for use, used said products, and/or transacted business and committed tortious acts in Minnesota from which Plaintiff's claims arise.

22. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

23. The Defective Vehicles made the subject of this suit, which are manufactured, designed, produced, distributed, and sold by Defendants, are easy to steal, unsafe, and worth less than they would be if they did not have the defect.

24. Defendants manufacture, design, produce, distribute and sell the "Defective Vehicles," which are hereby defined as: "all Kia models from 2011-2021 that lack an engine immobilizer" All these vehicles share the same defects, and therefore an owner of any one of them may bring a class action on behalf of the entire class.

25. Defendants concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff, in Defendants' advertising, labeling or otherwise that these vehicles are defective and are not fit for the ordinary purposes for which the vehicles are used in that they are easy to steal, unsafe, and worth less than they should be, if they were not defective.

26. One of the reasons why these vehicles are stolen so easily is that the vehicles do not comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114. FMVSS 114, S.5.1.1 requires:

> Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:
>
> (a) The normal activation of the vehicle's engine or motor; and
>
> (b) Either steering, or forward self-mobility, of the vehicle, or both.

27. The Defective Vehicles do not comply with this FMVSS in that whenever the key is removed from the starting system, neither steering nor forward self-mobility is prevented. If it were, the vehicles would not be stolen at alarming rates.

28. A stolen vehicle cannot provide reliable transportation.

29. A stolen vehicle is not a safe vehicle.

30. A vehicle that can be too easily stolen is not a vehicle that can be depended on to provide reliable transportation.

31. A vehicle that can be too easily stolen is not a safe vehicle.

32. The vehicles are defective in that, among other things, Defendants manufactured and designed them without engine immobilizers, an electronic security device that makes it more difficult to start a vehicle without a key.

33. This means that all a thief needs to do is strip the ignition column, exposing a piece that pops off, and then stick a USB drive, a knife, or some other similar tool to start the vehicle without a key or code.

34. Once they do so, they can freely operate the vehicle, including the vehicle's steering and forward self-mobility.

35. Considering how many people charge their cell phones in their cars, the necessary instrument needed to steal a Defective Vehicle is usually readily available to any thief.

36. Additionally, on information and belief, some of the Defective Vehicles' windows are not adequately connected to the security system which thus allows a thief to break or pry the window without the alarm being triggered.

37. Defendants knew their vehicles were defective in this manner but failed and refused to disclose these defects to customers, despite having the capability and means to do so.

38. Defendants had the capability and means to add an engine immobilizer or similar device, yet they failed to do so.

39. Defendants also knew just how dangerous it was to not have an engine immobilizer.

40. Beginning in 2009, Kia sought to add an immobilizer to its Amanti line. It told the federal government that this device was similar to other devices which reduce theft by 58 to 80 percent. *See,* Federal Register, Vol. 75, No. 6, page 1448, January 11, 2010.

## **CLASS ACTION ALLEGATIONS**

41. Plaintiff brings this class action pursuant to Rule 23, Federal Rules of Civil Procedure, on behalf of himself and the following class of similarly situated persons:

   a. "Minnesota Class" based on claims brought under the MUDTPA, and for unjust enrichment, negligence consisting of all persons who purchased any of the Defective Vehicles in the state of Minnesota for personal, family, business, or household purposes within the applicable statute of limitations period; or

   b. A "Minnesota Class" based on claims of unjust enrichment, negligence, and design defect consisting of all consumers who own any of the Defective Vehicles in Minnesota.

42. Excluded from each Class is Defendants, including any parent, subsidiary, affiliate or controlled person of Defendants; Defendants' officers, directors, agents or employees; the judicial officers assigned to this litigation; and members of their staffs and immediate families. Also excluded from the Class are those claiming they have suffered a personal injury as result of the Defective Vehicles.

43. The proposed Minnesota Class meets all requirements for class certification. The Class satisfies the numerosity standards. The Class is believed to number in the thousands of persons. As a result, joinder of all Class Members in a single action is impracticable. Class Members may be informed of the pendency of this Class Action by, among other methods, direct, published and/or broadcast notice.

44. There are questions of fact and law common to the Minnesota Class which predominate over any questions affecting only individual members. The questions of law and fact common to the Class arising from Defendants' actions include, without limitation, the following:

7

a. Whether Defendants manufactured and designed the Defective Vehicles without engine immobilizers;

b. Whether Defendants represented that the Defective Vehicles included an engine immobilizer;

c. Whether Defendants representations regarding the Defective Vehicles created a likelihood of confusion or misunderstanding with regard to whether the vehicles included an engine immobilizer;

d. Whether the failure of the vehicles to, among other design failures, have engine immobilizers makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers

e. Whether the absence of an engine immobilizer, among other design failures, is a material fact in the purchasing of a vehicle;

f. Whether, in marketing and selling the Defective Vehicles, Defendants failed to disclose the lack of an engine immobilizers and other design failures;

g. Whether Defendants failed to disclose and/or concealed the material fact that the Defective Vehicles, among other things, did not have engine immobilizers;

h. Whether Defendants failed to warn adequately of the dangers of vehicles that do not contain engine immobilizers, among other things;

i. Whether Defendants knew or should have known that the Defective Vehicles did not have engine immobilizers, among other things;

    j.    Whether Defendants knew or should have known that the failure of the vehicles to have engine immobilizers, among other things, makes them easy to steal, unsafe, and worth less than they would be if they had engine immobilizers;

    k.    Whether Defendants continued to manufacture, market, distribute, and sell the Defective Vehicles notwithstanding its knowledge of the defects' dangerous nature and risks of harm;

    l.    Whether Defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of the Defective Vehicles from the consuming public;

    m.    Whether the Defective Vehicles proved reliable transportation;

    n.    Whether the Defective Vehicles are safe;

    o.    Whether the Defective Vehicles contain a design defect; and/or

    p.    Whether Defendants' conduct violated the MUDTPA.

45.    The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of this controversy.

46.    A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate actions by individual Class Members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of the Minnesota Class Members to protect their interests.

47. The claims of Plaintiff are typical of the claims of members of the Minnesota Class. Upon information and belief, the Defective Vehicles all share the same defects. Upon information and belief, the labels, manuals, advertising, and disclosures concerning the Defective Vehicles all fail to reasonably disclose the presence of these defects. Therefore, the information withheld by Defendants to Plaintiff and all Minnesota Class members was identical.

48. Plaintiff is an adequate representative of the Minnesota Class because he is a member of the Class and his interests do not conflict with the interests of the members of the Minnesota Class he seeks to represent. The interests of the members of the Minnesota Class will be fairly and adequately protected by the Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex class action litigation.

49. Plaintiff seeks a refund of some or all monies paid as a result of the purchase of the Defective Vehicle that occurred following Defendants' wrongful and improper conduct in connection with the manufacture, marketing, distribution, testing, promotion, labeling and/or selling of the Defective Vehicle.

50. Plaintiff also seeks compensation for damages incurred beyond the reduced value or loss of their vehicles, including but not limited to the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

51. Plaintiff specifically excludes from this class action any damages, losses, or other relief of any kind arising from the personal injuries suffered by those class members personally injured by the Defective Vehicle.

52. Maintenance of this action as a class action is a fair and efficient method for the adjudication of this controversy. It would be impracticable and undesirable for each member of

the Minnesota Class who suffered harm to bring a separate action given the damages at issue compared to the costs of litigating each individual claim. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Minnesota Class Members.

53. Class action treatment of the claims in this action is the superior method of resolution with respect to concerns of efficiency, fairness and equity over other available methods of adjudication.

54. Class action treatment is appropriate in this case because Defendants acted, or refused to act, in a manner that was generally applicable to – and often identical to – each member of the Minnesota Class. Defendants provided vehicles with the same defect to, and withheld the same information from, all members of the Minnesota Class and sold vehicles with the same defects.

55. Notice can be provided to Class Members by using techniques and forms of notice similar to those customarily used in other defective-product cases and complex class actions.

## **CLAIMS FOR RELIEF**

### **COUNT I – VIOLATION OF THE MINNESOTA UNIFORM DECEPTIVE TRADE PRACTICES ACT (MUDTPA §325D.43 )**

56. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

57. The MUDTPA, provides, in part, that a person engages in a deceptive trade practice when, in the course of business, the person represents that goods have characteristics or benefits that they do not have. Minn. St. § 325D.44 subd. 1(5).

58. The MUDTPA, provides, in part, that a person engages in a deceptive trade practice when, in the course of business, the person engages in conduct that creates a likelihood of confusion or misunderstanding. Minn. St. § 325D.44 subd. 1(13).

59. The acts and practices engaged in by Defendants, and described herein, constitute deceptive business practices in violation of the MUDTPA.

60. Defendants engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts—specifically, the failure to warn or disclose that the vehicles were defective, including that they lacked an engine immobilizer, as well as the representation that the Defective Vehicles meet all federal safety standards—in connection with the sale, distribution or advertisement of the Defective Vehicle in violation of the MUDTPA.

61. Defendants engaged in unlawful practices including conduct that created the likelihood of confusion or misunderstanding as to whether the Defective Vehicles were equipped with an engine immobilizer.

62. Under Minn. St. § 325D.44 subd. 2, in order to prevail under the MUDTPA, "a complainant need not prove . . . actual confusion or misunderstanding."

63. Plaintiff purchased the Defective Vehicle, a product that was falsely represented, as stated above, in violation of the MUDTPA, and as a result, Plaintiff suffered economic damages in that the vehicle he purchased was worth less than the vehicle he thought he had purchased had Defendants not omitted and/or misrepresented material facts. Plaintiff, and other reasonable consumers, had no reasonable information to suggest that the Defective Vehicles lacked an engine immobilizer, failed to meet FMVSS 114, or was otherwise easy to steal and unsafe.

64. Plaintiff and the Minnesota Class members acted as reasonable consumers would in light of all circumstances.

65. Defendants' actions and omissions would cause a reasonable person to be confused or have a misunderstanding as to whether the Defective Vehicles were equipped with engine immobilizers, complied with FMVSS 114 and were easy to steal.

66. As a result of Defendants' actions and omissions, Plaintiff and the Minnesota Class suffered economic damages that can be calculated with a reasonable degree of certainty, including a refund of money paid as a result of their purchases.

67. These damages are not limited to only the difference in value between a Defective Vehicle and a similar vehicle that is not defective and loss of value of the vehicle due to damage and theft. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

68. Plaintiff and the Minnesota Class also seek injunctive relief, requiring Defendants to fix the Defective Vehicles.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

### COUNT II - VIOLATION OF THE MINNESOTA PREVENTION OF CONSUMER FRAUD ACT (MPCFA) – MINN. ST. § 325F.68 *ET SEQ*.

69. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

70. Plaintiff, Class Plaintiffs and Defendants are all "person[s]" for purposes of the MPCFA. Minn. St. § 325F.68 subd. 3

71. The MPCFA provides in pertinent part:

> The act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is enjoinable as provided in section 325F.70.

Minn. St. §325F.69

72. Defendants sold the Defective Vehicles in Minnesota and throughout the United States.

73. The Defective Vehicles meet the definition of "merchandise" under the MPCFA. Minn. St. §325.68

74. Defendants' sale of the Defective Vehicles meet the definition of "sale" under the MPCFA. Minn. St. §325F.68.

75. Defendants engaged in misrepresentation, deception, or deceptive practices in the sale of the Defective Vehicles in that Defendants failed to warn or disclose that the vehicles were defective, including that they lacked an engine immobilizer, as well as by representing that the Defective Vehicles meet all federal safety standards including FMVSS 114.

76. Pursuant to Minn. St. §325F.70, Plaintiff is entitled to seek an order enjoining future conduct by defendants, damages for the difference in value between a Defective Vehicle and a similar vehicle that is not defective and loss of value of the vehicle due to damage and theft. Other damages include, but are not limited to, the purchase price of a "Club" or other similar device to prevent theft, the increase in insurance premiums they are or may face due to the design defect, and the stigma associated with the Defective Vehicles.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages in excess of the jurisdictional limit as determined at trial, injunctive relief, for the costs of this action, attorney's fees, and for such further relief as the Court deems fair and reasonable.

## COUNT III - UNJUST ENRICHMENT

77. Plaintiff re-alleges and incorporates herein all other allegations in this Complaint.

78. Plaintiff and the Minnesota Class members purchased vehicles that they would not have purchased had they known that the vehicles, among other defects, contain no engine immobilizers, are far easier to steal than other vehicles, and are therefore unsafe and worth less than if they had engine immobilizers.

79. The purchase of the Defective Vehicles conferred a benefit upon Defendants. Defendants manufactured, distributed and sold the Defective Vehicles at a higher profit due to the lack of the engine immobilizer and other anti-theft devices.

80. Defendants appreciated and knowingly accepted the benefit of the sale of the Defective Vehicles to Plaintiff and the Minnesota Class members.

81. Allowing Defendants to receive the benefit of selling the Defective Vehicles without an engine immobilizer and other safety features that prevent the easy theft of the Defective Vehicles would be inequitable. Defendants received greater profit from sale of the Defective Vehicles as compared to vehicles properly equipped with engine immobilizer devices and other anti-theft safety features.

82. The Defendants were therefore unjustly enriched at the expense of and to the detriment of the Plaintiff and the Minnesota Class.

83. Plaintiff and the Minnesota Class are therefore entitled to restitution from the Defendants, and seek an order requiring the Defendants to disgorge all profits, benefits and other

compensation the Defendants obtained from the sale of these products without engine immobilizers and anti-theft safety features.

WHEREFORE, Plaintiff prays for judgment against Defendants for actual damages, in excess of the jurisdictional limit and as determined at trial, for the costs of this action, and for such further relief as the Court deems fair and reasonable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

a. That the Court enter an order certifying the Minnesota Class, appointing Plaintiff as representative of the Minnesota Class, appointing Plaintiff's counsel as class counsel, and directing that reasonable notice of this action, as provided by Rule 23, be given to the Minnesota Class;

b. For a judgment against Defendants for the causes of action alleged against it;

c. For damages in an amount to be proven at trial;

d. For appropriate injunctive relief, enjoining the Defendants from selling the Defective Vehicles and ordering them to fix or replace the vehicles;

e. For attorney's fees;

f. For Plaintiff's costs incurred; and

g. For such other relief in law or equity as the Court deems just and proper.

## DESIGNATION AND DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

    /s/ *George Chronic*
George "Jed" Chronic    #0388688
MASCHKA, RIEDY RIES & FRENTZ
151 St. Andrews Court, Building 1010
Mankato, MN  56001
Telephone:  (507) 625-6600
Facsimile:  (507) 625-4002
jed_chronic@mrr-law.com

and

Kenneth B. McClain  (*Pro Hac Vice to be filed*)
Jonathan M. Soper  (*Pro Hac Vice to be filed*)
Kevin D. Stanley  (*Pro Hac Vice to be filed*)
Chelsea M. Pierce  (*Pro Hac Vice to be filed*)
Humphrey, Farrington & McClain, P.C.
221 West Lexington Ave., Ste. 400
Independence, MO 64051
(816) 836-5050
(816) 836-8966 –fax
kbm@hfmlegal.com
jms@hfmlegal.com
kds@hfmlegal.com
cmp@hfmlegla.com

ATTORNEYS FOR PLAINTIFFS